IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KURT SCHUMACHER,                                                 OPINION AND ORDER

       Plaintiff,                                                      15-cv-554-bbc

      v.

RANDY SCHOLZ, in his individual and official capacities,
and LINCOLN COUNTY, WISCONSIN,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Kurt Schumacher has filed this civil lawsuit under 42 U.S.C. § 1983 against defendants Randy Scholz and Lincoln County, Wisconsin. He contends that defendants violated his Fourteenth Amendment rights by removing him from his position as a social worker without affording him adequate due process before and after his removal. Defendants have filed a motion for summary judgment on all of plaintiff's claims, which I am granting. Although I conclude that plaintiff had a protected interest in his position as a social worker, the pre-termination hearing afforded him all the process he was due under the circumstances. Therefore, defendants did not violate plaintiff's constitutional rights when they removed him from his position.

      From the parties' summary judgment materials and the record before the court, I find that the following facts are not subject to genuine dispute.

1

UNDISPUTED FACTS

Plaintiff Kurt Schumacher was employed as a Social Worker/Intake Worker by defendant Lincoln County, Wisconsin, from October 1993 until he was removed from his position in May 2015. The series of events leading to plaintiff's removal began in early February 2015, when one of his co-workers, Sarah Brandner, reported to defendant Randy Scholz that plaintiff had called her "nicknames." Scholz, who was employed as Lincoln County's "Administrative Coordinator," interviewed plaintiff about his interactions with Brandner. During this interview, plaintiff admitted that he had occasionally referred to Brandner as "the hall monitor" and "sheriff," but stated that these nicknames were chosen for no reason other than that he often saw Brandner in the hall. Plaintiff characterized his use of nicknames as part of a "lighthearted game" and told Scholz that Brandner herself had used the same nicknames when referring to plaintiff.

On February 23, 2015, Scholz formally interviewed Brandner regarding plaintiff's and Brander's interactions. Brandner confirmed that "hall monitor" and "sheriff" were the only two nicknames that plaintiff had used and that she had also used them to refer to plaintiff. However, Brandner became emotional during the interview and stated that she did not consider their use of nicknames to be a game. She also said that the only reason she used the nicknames to refer to plaintiff was to "defend herself." After this interview, Scholz decided to place plaintiff on paid administrative leave while he conducted a further investigation into plaintiff's workplace behavior and his interactions with coworkers.

On March 3, 2015, Scholz met with plaintiff and informed him that he believed

plaintiff had been "untruthful" during the investigation and that his conduct toward Brandner was "inappropriate." (Although it is not entirely clear from the record, it appears that the only "untruths" were plaintiff's statements that (1) he believed that he and Brandner were friends, which Brandner denied; and (2) he believed that a number of his fellow employees heard the two call each other nicknames, but only one employee would confirm that the two used nicknames.) Scholz told plaintiff that if he did not resign and sign a severance agreement releasing all claims against defendants, Scholz would initiate removal proceedings under Wis. Stat. § 17.16, which sets forth the procedure for terminating certain public employees, including appointed Social Workers/Intake Workers such as plaintiff. Plaintiff was given 21 days to decide whether to accept the severance agreement. During this time period, plaintiff's paid leave was converted to unpaid leave. (Plaintiff filed a grievance challenging the decision to place him on unpaid leave, but this grievance was denied as untimely.)

While plaintiff was on unpaid administrative leave and considering whether to accept the severance agreement, Scholz inspected plaintiff's work computer. After searching plaintiff's work email, Scholz found a number of emails that he believed violated Lincoln County's electronic communications policy because they were "disparaging or harassing" with respect to "race, sex, sexual orientation, disability, age, religious beliefs, or national origin." For example, one email plaintiff received from a friend included a picture of a voluptuous blonde woman at a TSA checkpoint with the caption, "I'm Predicting a TSA Pat-Down." Generally speaking, plaintiff was merely a passive recipient of these emails; when

3

he received them, he immediately forwarded them from his work email to his personal email.

On April 8, 2015, after plaintiff's opportunity to sign the severance agreement had passed, defendant Scholz initiated removal proceedings in accordance with Wis. Stat. § 17.16 by filing "verified charges" against plaintiff. Specifically, Scholz alleged that plaintiff had used a "derogatory" nickname to refer to Brandner, failed to be "truthful" during the subsequent investigation into his interactions with Brandner and had used Lincoln County's computer system to send and receive "disparaging or harassing" emails. The charges also included two prior incidents, one in May 2012 and one in May 2014, when plaintiff was disciplined for "inappropriate and unprofessional behavior" towards coworkers. This unprofessional behavior included criticizing certain coworkers' "subpar" performance and holding himself out as having supervisory authority over these employees.

On April 9, 2015 plaintiff was formally notified of the charges against him and informed that a "Removal Hearing" would be held on April 20, 2015 before the Social Services Committee of the Lincoln County Board of Supervisors, which retained outside counsel, James P. Gerlach, to assist it in conducting the hearing. At plaintiff's request, the committee agreed to reschedule the hearing for May 4, 2015 so long as he waived any right to challenge defendants' decision to place him on unpaid administrative leave pending his removal hearing. More than a week prior to the hearing, counsel for Lincoln County provided plaintiff's counsel a copy of all of the exhibits defendant Lincoln County intended to present at the hearing, as well as a list of all witnesses it intended to call.

During the eight-hour hearing, the committee heard testimony from plaintiff, Scholz,

Brandner and two of plaintiff's former co-workers. Plaintiff was given an opportunity to cross-examine all of the witnesses testifying against him and present any evidence in his defense. At the conclusion of the hearing, the committee voted unanimously to remove plaintiff from employment. In its "Statement of Cause" explaining its decision, the committee stated that plaintiff's use of nicknames when referring to Brandner was derogatory and violated the "Performance Improvement Plan" and "Return to Work Contracts" he agreed to follow after the 2012 and 2014 incidents for which plaintiff had been disciplined. Moreover, the committee found that plaintiff had engaged in an "egregious violation of the Lincoln County Personnel Policy as it relates to his personal use of his work computer." The committee's decision was based on its consideration of all of these incidents and the totality of the evidence presented regarding plaintiff's conduct.

After the committee issued its decision, plaintiff did not file a lawsuit seeking certiorari review in any state court. Instead, plaintiff filed this action challenging as unconstitutional the process employed in rendering the decision.

OPINION

A. Legal Standard

As an initial matter, I note that plaintiff names both Scholz and Lincoln County as defendants with respect to his due process claim. Aside from raising a qualified immunity argument with respect to Scholz (an argument I do not need to address because Scholz is entitled to judgment on the merits), neither side distinguishes between the two defendants

or suggests that the standards governing plaintiff claims against them are different in any respect. Accordingly, I will treat Scholz and Lincoln County as one and the same for the purpose of deciding defendants' summary judgment motion.

In the context of a claim alleging a violation of a person's procedural due process rights, the court's focus is not on the decision that led to the alleged deprivation, but rather on the *process* used in arriving at that decision. Courts do not "sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." Ballance v. City of Springfield, 424 F.3d 614, 621 (7th Cir. 2005) (citing Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000)). If the process afforded plaintiff was sufficient under the Fourteenth Amendment, then the committee's decision must be upheld, regardless whether plaintiff's alleged "misconduct" may strike some as relatively trivial and the punishment imposed excessive.

After reviewing the parties' submissions and the record before the court, I conclude that the procedure employed and the hearing conducted by defendants satisfied their obligation to provide plaintiff a meaningful opportunity to be heard. Accordingly, defendants' motion for summary judgment must be granted.

A plaintiff asserting that he was terminated from public employment in violation of his Fourteenth Amendment procedural due process rights must prove two things. First, he must demonstrate that his position was one that fell within the scope of interests protected by the Fourteenth Amendment. Board of Regents of State Colleges v. Roth, 408 U.S. 564,

6

570-71 (1972); Citizens Health Corp. v. Sebelius, 725 F.3d 687, 694 (7th Cir. 2013) ("[T]he threshold question in any due process challenge is whether a protected property or liberty interest actually exists."). If the plaintiff's employment is protected under the Fourteenth Amendment, he must then demonstrate that he was terminated without being afforded "due process." Board of Regents, 408 U.S. at 570. In this case, the parties agree that plaintiff was entitled to due process because his position was protected under state law. Chicago United Industries, Ltd. v. City of Chicago, 669 F.3d 847, 851 (7th Cir. 2012). (protected interest exists "where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit"). Therefore, the only question before the court on summary judgment is whether plaintiff was afforded sufficient process before he was terminated.

A public employee is afforded due process in connection with his termination if he is given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545 (1965)). The specific type of hearing and procedural protections afforded the employee must be "appropriate to the nature of the case." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). After reviewing the parties' briefs and the record submitted on summary judgment, I conclude that the procedures and hearing afforded to plaintiff were "appropriate to the nature of the case" and satisfied due process.

B.  <u>Plaintiff Was Afforded Adequate Pre-Termination Process</u>

In <u>Loudermill</u>, the United States Supreme Court held that in the employment context, due process requires, at a minimum, that public employees be provided the following pre-termination protections: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his or her side of the story. <u>Loudermill</u>, 470 U.S. at 542-43. Plaintiff was afforded each of these protections.

First, plaintiff was afforded "oral or written notice of the charges against him" on April 9, 2015, almost four weeks before the hearing, when Scholz gave plaintiff a copy of the "verified charges" against him. <u>Staples v. City of Milwaukee</u>, 142 F.3d 383, 386 (7th Cir. 1998) ("[E]ven a few hours' warning would permit the employee to gather his thoughts and his evidence and to make an informed decision about the best way to respond to the charges."). The fact that the charges may have changed between the time of the initial interview and when they were formally tendered to plaintiff on April 9 is irrelevant. All that matters is that the formal charges against plaintiff, which were the same as those on which the committee ultimately relied, were provided to plaintiff in advance of his hearing. Plaintiff cites <u>Carmody v. Board of Trustees of University of Illinois</u>, 747 F.3d 470 (7th Cir. 2014), but that case is not instructive because the plaintiff in that case was ultimately disciplined for reasons that were not disclosed before the hearing. In <u>Carmody</u>, the Court of Appeals for the Seventh Circuit held that a public employee's due process rights might be violated if the charges ultimately relied upon in dismissing the employee were not adequately

disclosed before the pre-termination hearing. Id. at 477. Here, unlike in Carmody, all of the charges supporting the committee's decision were set forth in its "Statement of Cause" and mirrored those included in the "Verified Charges" tendered to plaintiff on April 9.

With respect to the second requirement set out in Loudermill, I conclude that defendants satisfied their obligation to provide plaintiff an explanation of the evidence against him. In fact, plaintiff received more than an explanation: he received the *actual* evidence defendants intended to present and a list of witnesses they intended to call.

Plaintiff contends that he did not receive an adequate "explanation" of the evidence because at the hearing defendant's counsel attempted to open some of the internet links embedded in the incriminatory emails taken from his computer, but this argument is unavailing. First, plaintiff was aware of these links and could have attempted to open them on his own before the hearing. Defendants' obligation to provide plaintiff an "explanation" of the evidence against him in advance did not require them to walk plaintiff through the argument they would be making at the hearing or provide plaintiff a step-by-step outline of how each piece of evidence might be used. Moreover, at the hearing, plaintiff's counsel objected to opening these links and his objection was sustained at the hearing. Nothing in the "Statement of Cause" suggests that the committee relied upon the allegedly improper internet links; plaintiff's contention that they "improperly influenced" the committee to vote in favor of removal is mere speculation. Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010) ("[Courts'] favor toward the nonmoving party [on summary judgment] does not extend to 'drawing inferences that are supported by only speculation or conjecture.'")

9

(quoting Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008).

Third, plaintiff was given an ample opportunity to "tell his story." The committee conducted a full hearing that lasted more than 8 hours. Plaintiff was represented by counsel, who gave an opening and closing statement, was allowed to examine witnesses and was able to present testimony and evidence. In all respects, this was a full evidentiary and adversarial hearing conducted by an impartial decision-making committee. The process plaintiff received was more than adequate to satisfy the requirements in Loudermill.

### C. Plaintiff Was not Entitled to Additional Process after His Termination

Plaintiff's argument that he was not provided adequate post-deprivation process is similarly unavailing. Generally, an employee does not have a right to post-deprivation process if he received a full hearing before the deprivation. Gilbert v. Homar, 520 U.S. 924, 930 (1997) (discussing post-deprivation process as a substitute for, rather than a necessary complement to, pre-deprivation process). Plaintiff contends that he is entitled to a post-deprivation hearing because his pre-deprivation hearing was "inadequate and unfair," but I disagree. As discussed above, plaintiff was afforded a robust evidentiary hearing and the alleged defects he identifies did not render his removal hearing constitutionally infirm. Because plaintiff received a full and fair hearing before his termination, he was not entitled to anything more. See, e.g., Greer v. Amesqua, 212 F.3d 358, (7th Cir. 2000) (plaintiff's procedural due process claim dismissed despite lack of post-termination hearing because pre-termination hearing was adequate).

10

Even if I assume that plaintiff was entitled to another hearing, one was available in the form of state court certiorari proceedings. It is well established in Wisconsin that state board or committee actions, such as the committee's decision in this case to remove plaintiff from his job, may be reviewed by way of certiorari. See, e.g., State ex rel. Iushewitz v. Personnel Review Board, 176 Wis. 2d 706, 710, 500 N.W.2d 634 (1993) ("It is well established in this state that where there are no statutory provisions for judicial review, the action of a board or commission may be reviewed by way of certiorari."); State ex rel. DeLuca v. Common Council of City of Franklin, 72 Wis. 2d 672, 242 N.W.2d 689 (1976) (reviewing petition for writ of certiorari attacking removal proceedings conducted under Wis. Stat. § 17.16). State court review procedures, such as the right to petition for certiorari, are a sufficient form of post-deprivation process. Easter House v. Felder, 910 F.2d 1387, 1406 (7th Cir. 1990) (holding that a state post-deprivation remedy is adequate unless it can be characterized as "meaningless or nonexistent"). Although plaintiff did not petition for a writ of certiorari, that is irrelevant. What matters is that he had the opportunity for additional process if he wanted it. Veterans Legal Defense Fund v. Schwartz, 330 F.3d 937, 941 (7th Cir. 2003) (holding that a plaintiff cannot "claim that she was denied due process just because she chose not to pursue remedies that were adequate"). Accordingly, I am rejecting plaintiff's argument that he was not afforded an adequate "post-termination" hearing.

### D. Plaintiff Was not Entitled to a Separate "Name Clearing" Hearing

Finally, plaintiff contends that defendants violated his due process rights by stigmatizing him and failing to provide him a "name clearing" hearing. This argument is a

11

non-starter. His removal hearing functioned as both a pre-termination hearing and a "name clearing" hearing, at which he had ample opportunity to address the allegedly false charges against him. Endicott v. Huddleston, 644 F.2d 1208, 1217 (7th Cir. 1980) (name clearing hearing is adequate if aggrieved employee has "the right to support his allegations by argument, however brief, and if necessary, by proof, however informal"); Wojcik v. Massachusetts State Lottery Commission, 300 F.3d 92, 103 (1st Cir. 2002) ("The purpose of the hearing is only to allow the employee to clear his name of the false charges; compliance with formal procedures is not necessarily required."). It would make no sense to give plaintiff a separate hearing that would have essentially the same purposes as the hearing he already received, which was to give him an opportunity to show that he had done nothing wrong. See, e.g., Liotta v. Borough of Springdale, 985 F.2d 119 (3d Cir. 1993) (holding that plaintiff not entitled to separate post-termination name clearing hearing when pre-termination removal procedures afforded him notice of charges and opportunity to respond to allegations). I am not aware of any authority to support plaintiff's argument that he was entitled to a second hearing to repair the "reputational damage" he allegedly suffered as a result of the committee's determination after the first hearing and plaintiff has not cited any.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Randy Scholz and Lincoln

County, Wisconsin, dkt. #11, is GRANTED.

2. The clerk of court is directed to enter judgment in defendants' favor and close the case.

Entered this 23rd day of August, 2016.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge